IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ZAKRO ROSHNIASHVILI,

         Petitioner,

v.                                                                                    CIVIL ACTION NO. 2:26-cv-00093

TOBY ALLEN, et al.,

         Respondents.

**MEMORANDUM OPINION AND ORDER**

The United States government has again violated the United States Constitution by arresting and detaining a person without due process and without statutory authority, confining Zakro Roshniashvili to the Southwestern Regional Jail for more than a month without lawful basis. For the reasons set forth herein, and as previously ordered on the record following the show cause hearing held on February 12, 2026, the Court **ORDERS** that the *Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (Document 1) be **GRANTED** and that Mr. Roshniashvili be **RELEASED** from custody **IMMEDIATELY**.

**FACTS AND PROCEDURAL HISTORY**

The Petitioner, Zakro Roshniashvili, is a citizen of Georgia. He entered the United States on or about December 24, 2022, at or near San Luis, Arizona. The Department of Homeland Security (DHS) processed him and issued a Notice to Appear for April 13, 2023, commencing removal proceedings. He submitted a timely application for asylum on or about July 21, 2023, which remains pending. He received work authorization and worked as a truck driver. He has no

criminal history and is accused of no criminal conduct. In short, he has met all obligations imposed by immigration authorities, including appearing for hearings, and has complied with the law during his presence in the United States.

Officers stopped the truck he was driving for a commercial vehicle inspection on I-77 near Mayan, West Virginia, on January 8, 2026. Immigration and Customs Enforcement (ICE) responded and took him into custody based on a custody "redetermination". There is no evidence as to what, if any, factors were considered to support the "redetermination". They arrested him and transported him to Southwestern Regional Jail, where he has remained in the custody of ICE. He has had no hearing. He has never been found to pose a risk of nonappearance or a danger to the community, and there is no indication he has ever been involved in gang activity.

Mr. Roshniashvili's arrest is one of many that has taken place in West Virginia and across the country in recent weeks. *See Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *19 (S.D.W. Va. Feb. 4, 2026) (Johnston, J.) (citing a press release from the United States Attorney's Office for the Southern District of West Virginia touting ICE arrests of 650 individuals in West Virginia in approximately two weeks during January 2026). Four District Judges within the Southern District of West Virginia, including the undersigned, have issued opinions within the past several days, granting relief to immigrants stopped and detained under similar circumstances and under the same legal theories proffered by the Respondents. *See*, *Antony Segundo Larrazabal-Gonzalez v. Christopher Mason, et al.*, Civ. Action No. 2:26-cv-49, Mem. Op. (S.D. W.Va. Jan. 28, 2026) (Goodwin, J.); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *19 (S.D.W. Va. Feb. 4, 2026) (Johnston, J.); *Alberto Jose Simanca Gonzalez v. Carl Aldridge, et al.*, Civ. Action No. 3:26-cv-55, 2026 WL 313476 (S.D. W.Va. February 5, 2026) (Chambers, J.);

*Yuri Jhoana Gutierrez Aroca and Arley Cabrera Valenzuela v. Christopher Mason, et al.*, Civ. Action No. 2:26-cv-57 (S.D. W.Va. Feb. 9,2026) (Goodwin, J.); *Rasul Umarov v. Christopher Mason, et al.*, Civ. Action No. 2:26-cv-81 (S.D. W.Va. Feb. 11, 2026) (Berger, J.).[1]  Judge Johnston noted that the Petitioner in *Briceno-Solano* "is just one of many individuals who were all arrested and detained by Immigration and Customs Enforcement (ICE) officers within a few days of each other while travelling on Interstate 77." *Briceno Solano,* 2026 WL 311624, at *2.  Other courts have found that DHS is detaining people "to fulfill an arrest quota" rather than based on any individual determination that those detained pose a danger or flight risk.  *Rangel v. Knight*, No. 1:25-CV-00607-BLW, 2025 WL 3229000, at *8 (D. Idaho Nov. 19, 2025); *see also Pichardo Medina v. Hermosilla*, No. 3:25-CV-02233-MC, 2025 WL 3712271, at fn. 6 (D. Or. Dec. 22, 2025).

While the Court has not exhaustively reviewed every case addressing the Department of Homeland Security's (DHS's) warrantless arrests and detention of noncitizens without hearings, more than 1200 decisions citing the statutory authority claimed by the Respondents[2], 8 U.S.C. § 1225, have been entered just since January 1, 2026, and nearly 3000 such decisions have been issued since August 1, 2025.  The vast majority of the cases considering the issues presented herein have rejected the Respondents' position.

---

[1] The Respondents acknowledged both in their brief and during the show cause hearing that there are no material factual or legal distinctions between Mr. Roshniashvili's case and that of Rasul Umarov, 2:26-cv-81, in which the Court recently ruled in favor of the Petitioner.

[2] Toby Allen, Superintendent of Southwestern Regional Jail, filed a brief response asserting that he is a nominal party, and the Respondents concur that the United States is the real party in interest.  The Court's use of the "Respondents" collectively throughout this opinion is intended to refer only to the federal Respondents.

## STANDARD OF REVIEW

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and…the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "A United States District Court has jurisdiction under 28 U.S.C. § 2241 to grant a writ of habeas corpus to a prisoner in custody in violation of the Constitution of the United States." *Jones v. Cunningham*, 371 U.S. 236, 236 (1963). "Writs of habeas corpus may be granted" to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence." *Briceno Solano*, Civ. Action 2:26-cv-45, 2026 WL 311624, at *4 (S.D. W.Va. February 4, 2026) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

## JURISDICTION

The Respondents request dismissal for lack of jurisdiction, arguing that two statutory provisions separately bar review. They argue that 8 U.S.C. §1252(b)(9) channels review of all aspects of removal petitions to courts of appeals. They contend that the Petitioner's challenge to "the decision and action to detain him…arises from the United States' decision to commence removal proceedings and is thus an 'action taken…to remove [Petitioner] from the United States." (Defs.' Resp. at 5-6.) In addition, the Respondents assert that 8 U.S.C. § 1252(g) deprives courts of jurisdiction to review claims "arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." (*Id*. at 8, quoting 8 U.S.C. § 1252(g)). They contend that Mr. Roshniashvili's arrest

4

and detention are simply a "method by which the Secretary of Homeland Security chooses to commence removal proceedings," and the Court lacks jurisdiction to review those matters. (*Id.* at 10.)

Judge Johnston exhaustively addressed the jurisdiction arguments in *Briceno Solano*, which are identical in all material respects to those presented herein, and the Court adopts his thorough, careful analysis. *Briceno Solano*, 2026 WL 311624 at 5-10. However, the Court will provide a brief summary to explain the basis for denying the Respondents' motion to dismiss for lack of jurisdiction.

8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Mr. Roshniashvili's challenge to his detention, based on the misapplication of 8 U.S.C. § 1225 to his case, is not a "question of law and fact…arising from any action taken or proceeding brought to remove an alien from the United States." A plurality of the United States Supreme Court squarely rejected the Respondents' broad reading of § 1252(b)(9), finding that although "the aliens would not be in custody" absent the application of challenged "statutory provisions require[ing] detention without a bond hearing," the Court had jurisdiction to review the

5

legal questions regarding statutory interpretation. *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018).[3]

Section 1252(g) provides that, subject to certain exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has emphasized that § 1252 is a narrow rule: "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (noting that "many other decisions or actions…may be part of the deportation process"). Mr. Roshniashvili's immigration confinement does not fall into any of the enumerated categories. The Respondents appear to argue that after removal proceedings have commenced, § 1252(g) strips courts of jurisdiction to review any action taken by immigration authorities. But

---

[3] Much of the authority relied upon by the Respondents on this issue consists of out-of-circuit precedent decided before *Jennings*, and the Respondents' brief cites a concurrence in *Jennings* without reference to the primary opinion, specifically rejecting that reasoning. *Jennings*, 583 U.S. at fn. 3 ("The concurrence contends that "detention *is* an 'action taken ... to remove' an alien" and that therefore "even the narrowest reading of 'arising from' must cover" the claims raised by respondents. *Post,* at 855. (*Thomas, J.*, concurring in part and concurring in judgment). We do not follow this logic. We will assume for the sake of argument that detention is an action taken "to remove an alien," *i.e.,* for the purpose of removing an alien, rather than simply an action aimed at ensuring that the alien does not flee or commit a crime while his proceedings are pending. But even if we proceed on the basis of that assumption, we do not see what it proves. The question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action.). Although the section regarding jurisdiction is a plurality opinion, the three dissenting justices would have limited application of §1259(b)(9) even more, to provide broader federal court jurisdiction. Thus, "the plurality's narrower rationale controls." *Yuri Jhoana Gutierrez Aroca and Arley Cabrera Valenzuela v. Christopher Mason, et al.*, Civ. Action No. 2:26-cv-57, Mem. Op. at fn. 22 (S.D. W.Va. February 9, 2026) (Goodwin, J.). On this issue and others, Counsel for the Respondents approaches (if not, steps over) the line of violating the rules of professional conduct regarding candor toward the tribunal that prohibits false statements of law and failure to disclose legal authority adverse to the position of the client. W. Va. Rules of Prof. Conduct, Rule 3.3(a)(1)-(2).

Mr. Roshniashvili does not challenge the commencement of removal proceedings—he challenges the decision to detain him under § 1225.

Therefore, the Court finds that there is no statutory bar to the Court's exercise of jurisdiction. Furthermore, if any statute did purport to bar jurisdiction, it would be inapplicable pursuant to the Suspension Clause. *Briceno Solano v. Christpher Mason, et. al.* Civ. Action No. 2:26-cv-45, 2026 WL 311624, at *9 (S.D. W.Va. Feb. 4, 2026).

## STATUTORY CONSTRUCTION

The core issue presented arises from the Respondents' change in policy regarding the interpretation of two statutory provisions governing the release or detention of noncitizens in the United States. The Respondents now take the position that all noncitizens present in the country who entered without inspection are subject to mandatory detention pursuant to 8 U.S.C. § 1225. Previously, noncitizens apprehended in the interior of the United States were considered for release on bond in accordance with 8 U.S.C. § 1226(a). DHS issued a memo on July 8, 2025, adopting the legal position that any alien in the United States who had not been admitted is subject to mandatory detention under § 1225(b). (ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), available at https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission). The Board of Immigration Appeals issued a precedential decision adopting this interpretation, which is binding on all Immigration Judges. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 226 (BIA 2025) (finding that the statutory language is "clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status").

7

That agency interpretation of the statutory language is owed no deference on judicial review. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024).

8 U.S.C. § 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," provides in § 1225(b)(2) that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1226, entitled "Apprehension and detention of aliens," sets forth procedures for the arrest, detention, and release of noncitizens within the United States pending additional proceedings. While § 1225 mandates detention of most arriving aliens not entitled to be admitted, § 1226 provides for discretionary detention or release on bond while removal proceedings are under consideration. Of note, § 1226(a) permits aliens to be arrested and detained only "on a warrant issued by the Attorney General."

The Supreme Court outlined the structure and interaction of these provisions in *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). After explaining the application of § 2255, the Court stated that "[e]ven once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls 'within one or more ... classes of deportable aliens.'" *Id.* (quoting § 1227(a)). "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." *Id.* "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and

8

(c)." *Id.* at 289. Even more directly, *Jennings* states "[a]s noted, § 1226 applies to aliens already present in the United States." *Id.* at 303. Indeed, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Like the vast majority of courts to consider the issue, this Court finds that § 1225(b)(2) is not applicable to people like Mr. Roshniashvili who have been present in the United States for an extended time.[4] For § 1225(b)(2) to be applicable, a "noncitizen must be (1) an applicant for admission, (2) who is 'seeking admission' to the country, and (3) whom an examining immigration officer determines 'is not clearly and beyond a doubt entitled to be admitted.'" *Briceno Solano,* Civ. Action No. 2:26-cv-45, 2026 WL 311624 at *12 (quoting *Martinez v. Hyde,* 792 F. § 1225(b)(2) Supp.3d 211, 214 (D. Mass. 2025). Construing "applicant for admission" within the context of § 1225(b)(2) to be a perpetual status for someone who has been living in the United States for years "would push the statutory text beyond its breaking point."[5] *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *14 (D. Nev. Nov. 17, 2025) (quoting *U.S. v. Gambino-Ruiz*, 91 F.4th 981, 988-89 (9th Cir. 2024)). Likewise, "an alien

---

[4] *But see contra*, *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *3-6 (5th Cir. Feb. 6, 2026) (finding that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided in the United States," reasoning that Congress intended the term "seeking admission" to have the same meaning as "applicant for admission"-- but also stating that "if Congress had intended an alien 'seeking admission' to effectively mean 'arriving alien,' it would have simply said 'arriving alien.'") Out of circuit precedent may be considered for its persuasive value. *Folkes v. Nelsen*, 34 F.4th 258, 286 (4th Cir. 2022) (rejecting out of circuit precedent because it "provides no persuasive reasoning"). The Fifth Circuit's strained reasoning lacks any such persuasive value, and the Court has not adopted it.

[5] Despite "applicant for admission" having a broad definition under § 1225(a)(1), Congress added § 1225(a)(1) to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in *removal proceedings* under the INA---in the position of an 'applicant for admission.'" *Torres v. Barr,* 976 F.3d 918, 928 (9th Cir. 2020) (emphasis added): *see also* 8 U.S.C. § 1229a(c)(2)(A) (providing that an alien in removal proceedings has the burden of proof if he or she is an "applicant for admission"). There is no indication, however, that Congress intended the same with respect to detention under § 1225(b)(2), and, in fact, based on the plain text, Congress clearly intended otherwise.

9

'seeking admission' must do more than simply exist within the United States." *Briceno Solano*, 2026 WL 311624, at *13. "If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) (explaining that the Respondents' interpretation violates the rule against surplusage). "[T[he phrases 'applicants for admission' and 'seeking admission,' taken together, are limited in temporal and geographic scope and apply within the specific context of the inspection of 'arriving' noncitizens, at or near ports of entry." *Escobar Salgado*, 2025 WL 3205356, at *15. The titles and headings of both § 1225 and § 1226, as well as § 1225's repeated reference to "examining immigration officers," "arrival" to the United States, and "inspections," point to the same conclusion: § 1225(b)(2) is not applicable to people like Mr. Roshniashvili, who are arrested far from a border and have lived and formed connections through their lengthy residence in the United States.

Although the Court does find the statute, taken as a whole and reading each provision in the context of the full statutory scheme, not to be ambiguous or susceptible to multiple constructions, if it were ambiguous, the canon of constitutional avoidance would require the Court to construe it in a manner that would avoid doubts about its constitutionality. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). As discussed below, mandatory detention, without a bond hearing, of individuals present in the United States violates the right to due process. Thus, given that there is a reasonable interpretation of the statute that avoids the constitutional issue, the Court concludes that § 1226, rather than § 1225, applies to noncitizens already in the country while removal proceedings remain pending.

DHS released Mr. Roshniashvili under § 1226(a) when he encountered DHS agents after his entry on December 24, 2022. He has employment authorization and a pending asylum application. There is no allegation that he committed any violation or misconduct since his arrival. He had been in the United States for more than three years at the time of his detention. The Respondents' detention of him on the basis that he is an applicant for admission, seeking admission, subject to mandatory detention under § 1225 is unlawful under the Immigration and Nationality Act (INA), and the Court finds that his petition should be granted on that basis.

The Respondents argue that if the Court rejects their position that § 1225 mandates detention, the Court should order that he receive a bond hearing pursuant to § 1226(a). But § 1226(a) permits the arrest and detention of aliens only "on a warrant issued by the Attorney General," and there is no indication that Mr. Roshniashvili's arrest was pursuant to such a warrant.[6] The I-213 form generated after his detention states only that he was arrested during a 287(g) operation (immigration operations involving local law enforcement) and "processed as a custody redetermination." (Document 10-2.) After unlawfully arresting and detaining Mr. Roshniashvili under one legal theory, they ask the Court to let them keep trying until perhaps they come up with a permissible legal basis—all while conceding in court that they had no knowledge as to the basis for the stop and arrest, no evidence that Mr. Roshniashvili committed a crime or poses a danger to anyone, no evidence to suggest that he poses any risk of nonappearance, and no indication that there has been any material change in his circumstances since his release in 2022. They conceded

---

[6] During the show cause hearing, the Court inquired about the basis for the stop and arrest and whether there was a warrant, and the Respondents indicated that they had no knowledge of any facts surrounding Mr. Roshniashvili's history, arrest, or status beyond the documents supplied with their response, which include no reference to a warrant. Appearing at a show cause hearing regarding the legality of a petitioner's detention with no information regarding the basis on which he was taken into custody does not meet the standards the Court expects (and has traditionally seen) from the attorneys within the United States Attorney's Office for the Southern District of West Virginia.

that he is following the process set forth by law to seek asylum and has fully complied with the immigration process. The remedy for the United States' unlawful detention of Mr. Roshniashvili is to *end* that unlawful detention, not to find another excuse for it. *See*, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.")

## DUE PROCESS

Even if the INA permitted Mr. Roshniashvili's detention, the Constitution does not. The Fifth Amendment states that "[n]o person shall be…deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (distinguishing between "aliens who have established connections in this country" and "have due process rights in deportation proceedings" and "alien[s] at the threshold of initial entry" who are subject to the conditions for entry set by Congress).[7] The United States claims the right to deprive Mr. Roshniashvili of his liberty with no hearing or process whatsoever.[8] "In our society liberty is the norm and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

---

[7] This distinction is particularly pertinent here, where the Respondents seek to apply the quite limited procedures of § 1225 to noncitizens within the United States.

[8] In addition to the liberty interest at stake, the Supreme Court has recognized, in the immigration context, "the right to rejoin her immediate family, a right that ranks high among the interests of the individual," where a resident alien was threatened with exclusion following a brief trip out of the country. *Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982).

Mr. Roshniashvili contends that detaining him without a hearing violates his right to procedural due process. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319 (1976). Exactly what constraints are imposed in a given circumstance "requires analysis of the governmental and private interests that are affected." *Id.* at 334. *Matthews* instructs courts to consider the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Mr. Roshniashvili's interest "in being free from physical detention by [his] own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Numerous courts have found that "individuals paroled from civil immigration custody have a protectable liberty interest in remaining so." *Azalyar v. Raycraft*, No. 1:25-CV-916, 2026 WL 30741, at *4 (S.D. Ohio Jan. 2, 2026) (collecting cases). "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 689–90 (2001). Mr. Roshniashvili has lived in the United States for more than three years. He received authorization for employment

13

and maintained employment. He has established residency and connections within the United States. The first *Matthews* factor weighs heavily in his favor.

The United States did not provide any factual information regarding the "procedures" used to detain Mr. Roshniashvili beyond the form produced by ICE following his arrest. As Judge Goodwin recently found in a similar case, "the Government presented no evidence. This was not a technical failure. It was a complete one." *Antony Secundo Larrazabal-Gonzalez v. Christopher Mason, et al.*, Civ. Action No. 2:26-cv-49, Mem. Op. at 7 (S.D. W.Va. Jan. 29, 2026). The risk of an erroneous deprivation of liberty when agents are given the power to indefinitely detain people with only the information garnered during a traffic stop on the side of the interstate is enormous, and enormously troubling. In some due process cases involving immigrants and deportation, the processes at issue impact only noncitizens seeking entry or claiming asylum, for example. In contrast, everyone in the United States is potentially at risk if officers are free to detain and incarcerate people without ever having to justify the detention, and without an expeditious opportunity for the individual detained to appear before a neutral arbiter.

Without due process, there is little to prevent an unethical agent from abusing the vast authority the Respondents' theory would grant him to target personal enemies. And there is nothing to protect the citizen who happens to share a name with a noncitizen from being arrested, incarcerated, and potentially deported—without ever having the opportunity to challenge the mistaken identification in a proceeding that meets the minimum standards for due process under the Fifth Amendment. *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137 (1979) (man held for approximately a week on a warrant for offenses committed by his brother, who used an identification card with his name); *Johnson v. Hammett*, No. CV ELH-18-1059, 2019 WL

14

7185559, at *2 (D. Md. Dec. 23, 2019) (an individual detained for approximately two days following a routine traffic stop during which officers discovered warrants for another person with the same name); *Robinson v. City of Hagerstown, MD*, No. CV SAG-20-0686, 2020 WL 2085467, at *1 (D. Md. Apr. 30, 2020) (man arrested three separate times on a warrant for someone with the same name in a different state). In the cited mistaken identity cases, officers discovered the mistake because they continued to investigate in preparation for the proceedings that follow an arrest. The United States urges the Court to permit it to arrest and detain people without requiring any further proceedings, outside of any eventual removal proceedings in immigration court. Detention "without explanation, without a hearing, without notice, or without any means of challenging that detention" is not only a violation of Mr. Roshniashvili's individual right to due process, but also incompatible with freedom and liberty that Americans take for granted. *Larrazabal-Gonzalez*, Civ. Action No. 2:26-cv-49, Mem. Op. at 7. This factor, too, weighs heavily in favor of Mr. Roshniashvili.

The final *Matthews* factor, the Government's interests, also weighs in favor of the Petitioner. The Respondents have a legitimate interest in enforcing immigration laws and detaining noncitizens as part of that process, generally to prevent flight and protect the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "However, these interests would not be burdened by the individualized determination of an immigration judge as to whether Petitioner should be released on bond under section 1226(a)." *Danny Briceno Solano v. Christopher Mason, et al.*, Civ. Action No. 2:26-cv-45, 2026 WL 311624, at *18 (S.D.W. Va. Feb. 4, 2026). Immigration enforcement has been conducted for decades prior to the Respondents' new interpretation of §§ 1225 and 1226 and corresponding warrantless arrests and detentions without bond hearings.

15

Detaining any noncitizens who happen to be travelling on I-77 during ICE enforcement activity does little to further the United States' interests in an efficient immigration system, preventing flight, or protecting the community from crime. While the Court has no role in overseeing the Government's enforcement priorities, dedicating extensive resources to detaining law-abiding noncitizens like Mr. Roshniashvili necessarily reduces the resources available for more targeted enforcement against those noncitizens who do pose a danger to the community or a risk of nonappearance.

As to Mr. Roshniashvili specifically, the Respondents failed to put forward any interest at all in continued detention. They concede that he has no criminal history and there is no reason to believe he poses any danger to anyone. They concede that he has complied with all immigration obligations and does not pose a risk of flight or nonappearance. They did not state the reason he was stopped and detained. They did not obtain even an administrative warrant for his arrest. DHS issued a work authorization valid until 2030, which suggests a presumption that he would remain free while his case works its way through the administrative immigration process. His time in the United States and the previous judgment by DHS that he be released bolsters his liberty interest.

The Respondents detained Mr. Roshniashvili in violation of both the Immigration and Nationality Act and the Constitution. As the Court previously found, the proper remedy is his release. In addition to the finding that release is the traditional remedy in a successful habeas action for unlawful detention, the Court concurs with Judge Johnston's finding that "there is little chance the Government would actually hold a bond hearing, and there is no chance any hearing that occurred would comport with due process." *Briceno Solano,* 2026 WL 311624 at *20 (outlining evidence that detainees who received bond hearings under § 1226 after federal habeas

relief were routinely denied bond, despite similarity to cases in which bond would have been granted prior to the change in policy).[9] Mr. Roshniashvili has met his burden of demonstrating that he is entitled to habeas relief.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (Document 1) be **GRANTED** and that Mr. Roshniashvili be **RELEASED** from custody **IMMEDIATELY**, and any personal belongings of Mr. Roshniashvili, including identification, work authorization, and other documentation, be returned to him. The Court further **ORDERS** that the Respondents be **PROHIBITED** from re-arresting and detaining the Petitioner absent a significant change in circumstances to justify detention.

The Court **ORDERS** that the *Respondents' Motion to Exceed Page Limit* (Document 10) be **GRANTED**, that the *Response to Order to Show Cause and Motion to Dismiss* (Document 10-1) be **FILED**, and that the motion to dismiss contained therein be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 17, 2026

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[9] The Court inquired of the Government regarding the process and outcomes of bond hearings in immigration courts following orders by federal courts in similar habeas proceedings, where those courts accepted the Government's argument that a bond hearing pursuant to §1226(a) rather than immediate release was the proper remedy. Counsel for the Government was unable to provide information and indicated he was not aware of immigration courts granting bond, given that those courts are bound by the BIA's determination in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).